# FIDELITY & CASUALTY CO. *v.* YOUNG SHOE PARLOR.

1. Where by its policy an insurer agreed to indemnify the insured for all loss by burglary of property from within the " premises as hereinafter defined," and stipulated that the term " premises " was limited (if the insured occupied only a part of the building)' to the " interior of the store loft, office room or rooms actually occupied by the assured on the floor or floors designated in the schedule," and where in reference to the " premises " the schedule, after setting forth the name and location of the building, stated that " the assured occupies rooms 206 and 207," the policy did not cover property stored, not in either of the rooms designated, but in a basement-room in the same building, which, though occupied by the insured, was not on the same floor with rooms 206 and 207.

2. Under the alleged facts stated in the second certified question, considered in connection with the stipulations of the policy, the insurer was not estopped from denying that the policy covered the property in the basement storage-room of the insured. GEORGE, J., dissents.

No. 1543.   SEPTEMBER 15, 1920.

Questions certified by Court of Appeals (Case No. 10293).

*Rosser, Slaton, Phillips & Hopkins,* for plaintiff in error.

*Little, Powell, Smith & Goldstein,* contra.

FISH, C. J. 1. The Court of Appeals certified to the Supreme Court the following question:

"This was a suit upon a policy of burglary insurance, under which a stock of goods in the Connally Building in the City of Atlanta was insured, upon conditions stated in the policy. As shown by the petition as amended, the goods, at the date on which the policy became effective, were in rooms 206 and 207 of the building; but at the date of the burglary they were in another room, actually occupied by the assured, on the basement floor of the same building, and not on the floor on which were rooms 206 and 207. The suit was in two counts. The first count was brought under the theory that the policy protected the property while stored in any portion of the building (halls, stairways, and entrances excepted) actually occupied by the assured at the date of the burglary. A general demurrer to each count of the petition was overruled.

"In the policy of insurance sued upon the insurance company agreed to indemnify the assured for all loss by burglary of property 'from within the premises as hereinafter defined;' and number 5 of the general provisions of the policy was as follows:

'No. 5. Premises within the meaning of this policy is limited as follows: (*a*) If the assured occupies the entire building designated in the schedule, the term is limited to the interior of the said building, excluding entrances, halls, and stairways. (*b*) If the assured occupies only a part of the said building, the term is limited to the interior of the store loft, office room or rooms actually occupied by the assured on the floor or floors designated in the schedule.'

"Number 7 of the general provisions of the policy was as follows:

'No. 7. This policy shall become null and void if, without the written consent of the company, the conditions or circumstances are so changed as to materially increase the risk, or if the assured defrauds or attempts to defraud the company in connection with the insurance.'

"In reference to the 'premises,' the schedule contained the following statements:

'1. The name of the assured is Young Shoe Parlor.

'2. The location of the building and the address of the assured is Connally Bldg., 24 Whitehall St., Atlanta, Fulton County, Ga.

'3. The assured occupies Rooms 206 and 207.'

Under these facts, did the policy cover the property of the assured while stored in a room actually occupied by the assured in the Connally Building, but on a different floor from rooms 206 and 207?"

This question is answered in the negative. It is clear from the quoted provisions of the policy, as set forth in the question, that the insurance company agreed to indemnify the assured for all loss by burglary of property "from within the premises as hereinafter defined," and that such premises consisted of rooms Nos. 206 and 207 in the Connally Building, in which the goods were when the policy was issued. But at the date of the burglary they were in another room, that is, a storeroom on the basement floor of the same building, and not on the floor on which were rooms Nos. 206 and 207, which the assured occupied at the dates of the policy and the burglary. Under these facts the policy did not cover the property of the assured stored in the room in the Connally Building on a different floor from rooms Nos. 206 and 207.

2. The Court of Appeals also propounded to this court the following question:

"If the above question is answered in the negative, then an answer is requested to the following question:

"2. The second count of the petition in the suit referred to in the preceding question alleges that even if the policy sued upon did not cover the property of the assured while stored in the basement of the Connally Building, the defendant is estopped from so asserting, by reason of the following facts:

'(12) About a week after the policy was taken out, petitioners stored the said property in the said basement. While petitioners believed that the said policy covered the said property when so stored, they desired to relieve all doubt on the subject, and applied to the agent of the defendant who had procured the contract for the defendant and had delivered the policy to the petitioners and had collected the premium from the petitioners, to wit, one Charles Adler, to procure for petitioners a rider to said policy, specifically

including the basement of said Connally Building, and notified the said Adler that unless this was done, petitioners would cancel said policy and procure other insurance. Thereupon the said Adler agreed to write the home office of the defendant for said rider, and specifically stated to petitioners that until said rider was issued or refused, their property in the said basement would be protected by the said policy, and that it was not necessary for them to cancel the said policy or to procure other insurance.

' (13). Thereafter the defendant sent an inspector to inspect the said storeroom and to report on the application for the rider, and the said report was favorable, and a rider was issued by the home office and was in process of being forwarded when the loss occurred.

' (14) Petitioners allege that they refrained from taking other insurance because of the specific agreement of the defendant through its agent aforesaid, and its specific representation through the said agent that it was not necessary for petitioners to cancel said policy and procure other insurance pending action on petitioner's application for a rider. Petitioners therefore aver that the defendant is estopped from denying that the said policy covered the property stored in the said basement.

' (15) Petitioners further allege that the defendant is also estopped from making said contention, for the following reasons: After the loss occurred and after petitioners' proof of loss had been filed, the defendant sent an adjuster to represent it in dealing with petitioners relative to petitioners' claim. The said adjuster first insisted that the policy did not cover the basement, and then insisted that there had been no satisfactory proof that the theft of the said property had been by violence of which there were visible signs.

' (16) After the said adjuster had made both of said claims and after petitioners had pointed out to him why the claim that the policy did not cover the basement was not well founded, the said adjuster finally stated to your petitioners that if they would get up satisfactory proof to show that the theft had been by violence of which there were visible signs, they would be considered by the company, and if it appeared that the theft had been accomplished in this way the loss would be paid.

' (17)' Petitioners thereupon did submit such proofs, which

were obtained at considerable expense and with considerable effort, it being necessary for petitioners to hire a detective; but said proofs were obtained and were submitted.

'(18)  Petitioners aver that the defendant, by inducing petitioners to incur the expense and trouble of obtaining such proofs upon the belief that if the proofs could be produced the policy would be paid, thereby estopped itself to now claim that the said policy did not cover the basement of said Connally Building?'

" The policy sued upon contained the following provision:

' No. 19.  No erasure or change appearing on this policy as originally printed nor change or waiver of any of its terms or conditions or statements, whether made before or after the date of this policy, shall be valid unless set forth in any endorsement added hereto and signed by the President, a Vice-President, or one of the Secretaries of the Company.  Neither notice given to nor the knowledge of any agent or any other person, whether received or acquired before or after the date of this policy, shall be to waive any of the terms or conditions or statements of this policy or to preclude the Company from asserting any defense, under said terms and statements, unless set forth in an endorsement added hereto and signed by one of the said officers.'

" Is the defendant estopped, because of the above alleged facts, from denying that the policy sued upon covered the property of the assured while located in the storage-room of the assured in the basement of the Connally Building? "

In reply to this second question we answer that the insurance company was not estopped by reason of the facts alleged in paragraphs 12 to 18, inclusive, of the petition as quoted above, when considered in connection with the 19th provision of the policy, also above quoted, from denying that the policy covered the goods in the storage-room of the assured in the basement of the Connally building.

Although the agent of the insurance company, who delivered the policy to the petitioners, and who had collected the premium from them, at the request of the petitioners and in the circumstances set forth in this second question, wrote to the home office of the company for the purpose of having the company issue the rider specified, covering the goods in the basement, and thereafter the company's inspector reported favorably on the applica-

tion for the rider, and the rider was issued by the home office and was in process of being forwarded when the loss occurred, these facts, in connection with others set forth in the question, did not estop the company from denying that the policy sued on did not cover the property of the assured while located in such storage-room. The rider, though "in process of being forwarded when the loss occurred," was never issued and delivered either actually or constructively by the company, and therefore never became a part of the contract of insurance, so as to make the policy effective as to the goods stored in the basement. It is obvious that such agent, by reason of the provisions set forth in "No. 19" quoted from the policy, had no authority to bind the company by promising or agreeing that the policy should protect the goods stored in the basement on a different floor until the company should decide whether it would issue and deliver the rider.

Many courts have held: "It is the general rule that where the [insurance] company, with knowledge of a breach of a condition or warranty, requires the insured after a loss to furnish proofs, or to furnish additional proofs, it will be held to have waived its rights to insist on the defense arising out of such breach." 3 Cooley's Briefs on Ins., 2733; 19 Cyc. 801; 14 R. C. L. 1197, § 376. This principle refers to waiver by the insurance company requiring proofs of loss with knowledge of the breach of a condition or warranty in the policy,— that is, the company, by requiring proofs of loss, waives its right to set up as a defense the forfeiture of the policy by reason of a breach by the insured of a condition or warranty therein; but the rule does not apply to a case where the company denies that the property burned or stolen was ever covered by the policy. The adjuster in the present case, whose authority was expressly limited by a stipulation in the policy (the 19th provision thereof), and who therefore had no authority to do so, could not, after the loss occurred, bind the company either by an express agreement on his part, or by an act of his in requiring the assured to make proofs of loss, so as to estop the company from denying that the property stolen was covered by the policy.

*All the Justices concur, except George, J., who dissents from the answer to the second question.*